IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| RAYMO LEONARD, #179 703, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:16-CV-746-ALB |
| | ) | [WO] |
| WALTER MYERS, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff Raymo Leonard is a state inmate incarcerated at the Donaldson Correctional Facility in Bessemer, Alabama. He files this *pro se* 42 U.S.C. § 1983 action alleging Defendants acted with deliberate indifference to his safety by failing to protect him from an inmate assault at the Easterling Correctional Facility on August 18, 2016. Named as Defendants are Warden Walter Myers, Lieutenant Joseph Danzey, and Correctional Officer Darrell Bell. Plaintiff requests damages. Doc. 1.

Defendants filed a special report, a supplemental special report, a reply, and supporting evidentiary materials—including affidavits, medical records, and prison records—addressing Leonard's claims for relief. Docs. 12, 13, 20, 24. In these filings, Defendants deny that they acted with deliberate indifference to Leonard's safety and deny violating any of his constitutional rights. *Id.*

Upon receipt of Defendants' special report and supplements thereto, the court issued an order directing Leonard to file a response to the arguments set forth by Defendants in their special report and supplemental special reports and advising him that his response should be supported by affidavits or statements made under penalty of perjury and other appropriate evidentiary materials. Doc. 14 at 2; *see also* Doc. 25. This order specifically cautioned the parties that "unless within

ten (10) days from the date of this order a party files a pleading which presents sufficient legal cause why such action should not be undertaken . . . the court may at any time [after expiration of the time for Plaintiff filing a response to the order] and without further notice to the parties (1) treat the special report, as supplemented, and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law."  Doc. 14 at 2.  Leonard responded to Defendants' special reports, *see* Docs. 15, 26, but his response fails to demonstrate a genuine dispute of material fact.  Doc. 14 at 2. The court will treat Defendants' reports as a motion for summary judgment, and it concludes that the motion is due to be resolved in favor of Defendants.

## I. STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322−324.

Defendants have met their evidentiary burden. Thus, the burden shifts to Leonard to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3); *Jeffery v. Sarasota White Sox, Inc*., 64 F.3d 590, 593−594 (11th Cir. 1995) (holding that, once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate there is a genuine dispute of material fact) (internal quotations omitted).  This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014); *Barker v. Norman*, 651 F.2d 1107, 1115 (5th Cir. Unit A 1981)[1] (holding that a verified complaint serves the same purpose of an affidavit for purposes of summary judgment). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine [dispute] for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (internal quotation marks omitted).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."[2] *Anderson*, 477 U.S. at

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[2] Although factual inferences must be viewed in a light most favorable to the non- moving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521,

255.   At the summary judgment stage, this court should accept as true "statements in [the plaintiff's] verified complaint, [any] sworn response to the officers' motion for summary judgment, and sworn affidavit attached to that response[.]" *Sears v. Roberts*, 2019 WL 1785355, *3 (11th Cir. April 24, 2019); *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (holding that a plaintiff's purely self-serving and uncorroborated statements "based on personal knowledge or observation" set forth in a verified complaint, affidavit or declaration sworn under penalty of perjury may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [Plaintiff's] sworn statements are self-serving, but that alone does not permit [the court] to disregard them at the summary judgment stage . . . .  Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving."). However, general, blatantly contradicted and merely "[c]onclusory, uncorroborated allegations by a plaintiff in [his verified complaint or] an affidavit . . . will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion."  *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (*citing Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). In addition, conclusory allegations based on purely subjective beliefs of a plaintiff and assertions of which he lacks personal knowledge are likewise insufficient to create a genuine dispute of material fact. *See Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-24; *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (holding

---

525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Leonard's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

that to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citation omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## II. DISCUSSION[3]

### A.     Absolute Immunity

To the extent that Leonard sues Defendants in their official capacities, they are immune from monetary damages.  Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its

---

[3] In accordance with applicable federal law, the court limits its discussion to the claims identified in the complaint. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment."); *Ganstine v. Secretary, Florida Dept. of Corrections*, 502 F. App'x. 905, 909-10 (11th Cir. 2012) (holding that a plaintiff may not amend complaint at the summary judgment stage by raising a new claim or presenting a new basis for a pending claim); *Chavis v. Clayton County School District*, 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002) (noting that district court did not err in refusing to address a new theory raised during summary judgment because the plaintiff had not properly amended the complaint with respect to such theory).

Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, Defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities.  *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

**B.    Qualified Immunity**

Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is not merely a defense against liability but immunity from suit, and the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (quotation marks and citations omitted). To receive qualified immunity, the public official must first prove he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). There is no dispute that Defendants here were acting within the course and scope of their discretionary authority when the incidents occurred. Leonard must, therefore, allege facts that, when read in a light most favorable to him, show that Defendants are not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

To satisfy his burden, Leonard must show two things: (1) that a defendant committed a constitutional violation and (2) that the constitutional right a defendant violated was "clearly established." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quotation marks and citations omitted). "Clearly established law" means (1) "a materially similar case has already been decided"; (2) "a broader, clearly established principle that should control the novel facts of the situation"; or (3) "the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary." *Gaines v. Wardynski*, 871 F.3d 1203, 1208–09 (11th Cir. 2017) (quotation marks and citations omitted). The controlling authority is from "the United States Supreme Court, the Eleventh Circuit, or the highest court in the relevant state." *See id.* at 1209. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quotation marks and citations omitted). The Eleventh Circuit "has stated many times that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Gaines*, 871 F.3d at 1210.  "Exact factual identity with the previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011). If a plaintiff cannot establish both elements to satisfy his burden, the defendants are entitled to qualified immunity, and the court may analyze the elements "in whatever order is deemed most appropriate for the case." *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (*citing Pearson*, 555 U.S. at 241–42).

**C.    Deliberate Indifference**

"A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844-845 (1994) (internal quotations and citations omitted).  Officials responsible for prison inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces "a substantial risk of serious harm" and, with such knowledge, disregards the risk by failing to take reasonable measures to abate it.  *Id*. at 828.  A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

"It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834.  "Within [a prison's] volatile 'community,' prison administrators are to take all necessary steps to ensure the safety of . . . the prison staff and administrative personnel. . . . They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates themselves." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). The Eleventh Circuit, however, has consistently "stress[ed] that a prison custodian is not the guarantor of a prisoner's safety." *Purcell ex rel. Estate of Morgan v. Toombs County, Ga.*, 400 F.3d 1313 (11th Cir. 2005) (quotation marks and citation omitted). The duty to protect inmates from one another is not absolute "because the Eighth Amendment addresses only punishment.  Whether an injury inflicted by fellow prisoners . . . is punishment depends on the mental state of those who cause or fail to prevent it. The requisite mental state for prison officials is intent, or its functional equivalent, described as deliberate indifference[.]" *King v. Fairman*, 997 F.2d 259, 261 (7th Cir. 1993) (quotation marks and citations omitted). "Only '[a] prison official's deliberate indifference to a

known, substantial risk of serious harm to an inmate violates the Eighth Amendment.'" *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (quoting *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1028 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The Eleventh Circuit has consistently held that "to state a § 1983 cause of action against prison officials based on a constitutional deprivation resulting from cruel and unusual punishment, there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the [mere] tort to a constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (citation omitted); *Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986).

The establishment of both objective and subjective elements is necessary to demonstrate an Eighth Amendment violation, including one alleging deliberate indifference to an inmate's safety. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014). Regarding the objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh*, 268 F.3d at 1028–29 (11th Cir. 2011). On the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837-838; *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same). The conduct at issue "must involve more

than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991). . . . Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists - and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . . Each individual Defendant must be judged separately and on the basis of what that person [knew at the time of the incident]." B*urnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a guard's failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (quotation marks and citations omitted). "Merely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Id.*; *King*, 997 F.2d at 261 (holding that "[t]o sustain his constitutional claim, [the inmate] must demonstrate something approaching a total unconcern for his welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm.") (quotation marks and citations omitted).

Consequently, to survive the properly supported motion for summary judgment filed by Defendants, Leonard must first demonstrate an objectively substantial risk of serious harm existed to him and "that the defendant disregarded that known risk by failing to respond to it in an objectively reasonable manner." *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014). If he

establishes these objective elements, Leonard must then satisfy the subjective component.  To do so, Leonard must show that Defendants "subjectively knew that [he] faced a substantial risk of serious harm.  The [D]efendant[s] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id.* (internal citation omitted).

> To survive a motion for summary judgment, a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm.  In determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a particular threat or fear felt by [the] [p]laintiff. Moreover, the defendant-official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists—and the prison official must also draw that inference.

*Johnston v. Crosby*, 135 F. App'x 375, 377 (11th Cir. 2005) (quotation marks and citations omitted).

Leonard alleges that Danzey and Bell acted with deliberate indifference to his safety on August 18, 2016, when they failed to protect him from an inmate assault. On that day, Danzey and Bell placed inmate Darryl Blake in a segregation cell with Leonard against Blake's will. Blake informed the officers that he did not want to be placed in the cell with Leonard because the two inmates "had problems" in general population (which Leonard states was not true). Danzey and Bell placed Blake in the cell despite his comments to the officers that he did not want to be housed with Leonard. Danzey indicated to Blake his opinion that Blake had requested placement in segregation as a safety measure because he owed a debt to other inmates. Subsequently, Bell removed Leonard from the cell to attend a segregation review board meeting. Leonard returned to his cell and put his hands to the back of the cell door to have his handcuffs removed. Before Leonard's handcuffs were removed, Blake attacked Leonard by hitting him in the face and grabbing his legs. Blake then slammed Leonard against the door of the  cell  and to the floor where he sat on Leonard's chest and started choking him. Bell, assisted by another correctional officer—

Officer Cook—entered the cell and pulled Blake off Leonard. Leonard received a medical examination and body chart following the incident. He complains that he suffered injuries to his right shoulder, right elbow, and lower back from Blake's assault, which Leonard claims occurred because Blake was assigned to a cell in which he was not comfortable. Doc. 1 at 5–7.

Defendants deny that they acted with deliberate indifference to Leonard's safety. Specifically, Danzey testifies that he had no knowledge of any actual history of disagreements or incidents between inmates Blake and Leonard. Bell testifies that he had no knowledge or awareness of Blake's threatening Leonard prior to the August 18, 2016, incident. Defendants' evidence fails to reflect the existence of any institutional documentation regarding incidents between the two inmates prior to the August 18, 2016 occurrence. Docs. 12-2–12-4; Docs. 20-1–20-4  Doc. 28-1 at 2; Doc. 28-2 at 2; Doc. 24-3.  The unrefuted documents filed in this case show that Leonard and Blake were housed together at Easterling for almost two weeks—from March 27, 2016 to April 8, 2016—with no reported incidents of altercations between the two inmates or any reported incidents from either inmate about fears for their safety from each other. Docs. 24-1, 24-2. Further, Leonard's verified complaint and the testimony of Danzey and Bell indicate that it was Blake, not Leonard, who complained to Danzey and Bell that he did not want to be placed in the cell with Leonard on August 18, 2016.  Finally, Leonard's body chart, which was performed shortly after the incident with Blake, reflects that Leonard had no injuries; x-rays taken six days after the incident also do not show any injury to Leonard's shoulder, back, or elbow. Doc. 12-5 at 4, Doc. 16-6 at 2, Doc. 12-6 at 2–7.

In opposing Defendants' dispositive motion, Leonard claims that he informed Defendants that he and Blake had several altercations in population, and said that the two inmates would fight if housed together. Docs. 15, 26. However, in contrast, Leonard does not allege in his verified complaint that he complained to any Defendant or other prison official that he was in danger of

being attacked by inmate Blake, or that he feared being attacked by him. In fact, Leonard indicates in the complaint that Blake's statements to Danzey and Bell that he did not wish to be in the cell with Leonard, because the two inmates had problems in general population, "wasn't true." Doc. 1 at 5. The assertions made by Leonard in his opposition and affidavit are contradictory to his statements in the verified complaint, in which Leonard avers that it was Blake who told Danzey and Bell he did not want to be placed in the cell with Leonard because they had problems in general population. Doc. 1 at 5. Leonard presents no explanation for the discrepancy between the statement in his complaint and his claims in his later opposition and affidavit. This court may disregard Leonard's opposition and affidavit, which were filed solely to oppose summary judgment, to the extent that they directly contradict a statement in his complaint. *See Van T. Junkins and Associates v. U. S. Industries, Inc*., 736 F.2d 656, 657 (11th Cir. 1984); *see also McCormick v. Ft. Lauderdale*, 333 F.3d 1234,1240 n.7 (11th Cir. 2003) (contradictory affidavit submitted solely to defeat summary judgment may be disregarded by the court).

In addition, even if the court considers Leonard's assertions in his opposition and affidavit, there is no evidence that, prior to the August 18 incident, Leonard complained to or otherwise put Danzey or Bell or any other prison official on notice that he feared Blake, or that Blake had ever clearly threatened him so that the two could not be housed together. Further, Leonard's and Blake's claims of having engaged in altercations while housed together in general population, and their vague comments that they might fight if housed together, are insufficient to establish that Danzey and Bell had "actual knowledge" of a substantial risk of serious harm.  *Carter,* 352 F.3d at 1350. The record is devoid of evidence that Leonard informed Defendants of a credible threat made to him by Blake from which they could infer that a substantial risk of harm existed to Leonard prior

hold

to the attack.  In sum, there is no evidence before the court that Defendants had knowledge of any impending risk of harm posed by inmate Blake to Leonard.[4]

Leonard presents no evidence tending to show inmate Blake posed "an objectively substantial serious risk of harm" to him on August 18, 2016, a required element to establish deliberate indifference. *Marsh*, 268 F.3d at 1028–29.  Even had Leonard satisfied the objective component, his claim of deliberate indifference to his safety still fails, as he has not demonstrated that Defendants were subjectively aware of any risk of harm to him posed by Blake prior to the altercation made the basis of this complaint. *Johnson*, 568 F. App'x at 722 (holding that complaint was properly dismissed because "[n]owhere does the complaint allege, nor can it be plausibly inferred, that the defendants subjectively foresaw or knew of a substantial risk of injury posed by [the inmate-attacker]."); *McBride v. Rivers*, 170 F. App'x 648, 655 (11th Cir. 2006) (holding that district court properly granted summary judgment to the defendants as plaintiff "failed to show that the defendants had subjective knowledge of a risk of serious harm" because plaintiff merely advised he "had problems" with fellow inmate, was generally "in fear for [his] life," and didn't want to be "put [ ] in the cell with [fellow inmate]."); *Chatham v. Adcock*, 334 F. App'x 281, 293–94 (11th Cir. 2009) (holding that plaintiff was entitled to no relief where he failed to identify "any specific 'serious threat' from [fellow inmate], which he then reported to [the defendants]."); *Murphy v. Turpin*, 159 F. App'x 945, 948 (11th Cir. 2005) (holding that "the district court did not err by dismissing [plaintiff's] failure-to-protect charge for failure to state a claim. While [plaintiff] alleged he requested protection from certain inmates and that the defendants knew about his request for protection from his original cellmate, . . ., he did not allege that the defendants had notice that he was in danger from . . . the inmate who attacked him.  Simply put, the allegations of

---

[4] The court notes that despite Leonard's description of the attack by inmate Blake, his medical records reflect that he sustained no injuries from the incident, Doc. 12-6 at 2–7, and he concedes that his medical records do not support his version of events. Doc. 26 at 6.

[plaintiff's] complaint do not show the requisite subjective knowledge of a risk of serious harm, and, thus, do not state a claim for deliberate indifference resulting from a failure to protect from the attack. . . . Put another way, because [plaintiff] alleged no facts indicating that any officer was aware of a substantial risk of serious harm to him from [the inmate who actually attacked him] and failed to take protective measures, his claim fails."); *Johnston*, 135 F. App'x at 377 (holding that defendants were entitled to summary judgment because plaintiff provided no evidence that prison officials "had subjective knowledge of the risk of serious harm presented by [the inmate who attacked him]" and "introduced no evidence indicating that he notified [the defendants] of any particularized threat by [his attacker] nor of any [specific] fear [he] felt [from this particular inmate]."). Even if Defendants' conduct could be considered negligent, as explained, mere negligence cannot support a finding of deliberate indifference. *See Farmer*, 511 U.S. at 835; *Brown*, 894 F.2d at 1537. Because the record contains no evidence showing that Defendants acted with deliberate indifference to Leonard's safety, they are entitled to qualified immunity on the failure to protect claim.

## D.    Respondeat Superior

To the extent that Leonard seeks to impose liability on Defendant Myers on a theory of *respondeat superior*, he is entitled to no relief. Leonard has produced no evidence to show that Warden Myers was directly responsible for or personally participated in the conduct about which he complains. In such a situation, the law in this circuit is well settled. "[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Cottone*, 326 F.3d at 1360 (quotation marks and citation omitted). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Marsh*, 268 F.3d at 1035 (finding a

supervisory official "can have no *respondeat superior* liability for a section 1983 claim.");
*Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (holding supervisory officials are not
liable on the basis of *respondeat superior* or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263,
1269 (11th Cir. 1999), *citing Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (finding
42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of
their subordinates under either a theory of *respondeat superior* or vicarious liability.); *Antonelli v.
Sheahan*, 81 F.3d 1422, 1428 (7th Cir. 1996) (finding "a prisoner may not attribute any of his
constitutional claims to higher officials by the doctrine of *respondeat superior*; the official must
actually have participated in the constitutional wrongdoing.") (quotation marks omitted). "Absent
vicarious liability, each Government official, his or her title notwithstanding, is only liable for his
or her own misconduct." *Iqbal*, 556 U.S. at 677. Thus, liability for the actions of correctional
officials at the Easterling Correctional Facility could attach to Warden Myers only if he
"personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal
connection between [his] actions . . . and the alleged constitutional deprivation." *Cottone*, 326 F.3d
at 1360. To establish the requisite causal connection and avoid entry of summary judgment in favor
of Defendants, Leonard must present sufficient evidence which would be admissible at trial of
either "a history of widespread abuse [that] put[] [Defendants] on notice of the need to correct the
alleged deprivation, and [they] fail[ed] to do so" or "a . . . custom or policy [that] result[ed] in
deliberate indifference to [his safety], or . . . facts [that] support an inference that [Warden Myers]
directed  [Danzey and Bell] to act unlawfully, or knew that [they] would act unlawfully and failed
to stop [them] from doing so."  *Cottone*, 326 F.3d at 1360 (internal punctuation and citations
omitted).  After careful review of the pleadings and evidentiary materials submitted, the court finds
that Leonard has failed to meet this burden.

The record contains no evidence to support an inference that Warden Myers directed Danzey and Bell to act unlawfully, or knew they would act unlawfully and failed to stop such action.  In addition, Leonard has presented no evidence of obvious, flagrant or rampant abuse of continuing duration in the face of which Warden Myers failed to take corrective action. The record also demonstrates that the challenged action did not occur pursuant to a policy enacted by Warden Myers. Thus, the requisite causal connection does not exist in this case, and liability under the custom or policy standard is likewise not justified. *Cf. Employment Div. v. Smith*, 494 U.S. 872, 877 (1990); *Turner v. Safely*, 482 U.S. 78 (1987). For the foregoing reasons, Defendants are entitled to qualified immunity on this claim.

## III. CONCLUSION

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants' motion for summary judgment (Doc. 12) be GRANTED;

2. This case be DISMISSED with prejudice;

3.  Judgment be ENTERED in favor of Defendants.

It is further

ORDERED that **on or before August 19, 2019**, the parties may file an objection. Any objection filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which the parties object.  Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised this Recommendation is not a final order and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon

grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done, on this the 5th day of August, 2019.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge